Good morning, Your Honor. May it please the Court, Con Stolman for Petitioner Gerlach Stange. I'd like to reserve two minutes, please, for rebuttal. You may do so, but just watch the clock as it counts down. Okay, thank you. We have two consolidated petitions for review. The first seeks review of the denial of asylum, withholding, and relief under the Convention against Torture. The second seeks review of the BIA's subsequent decision to deny a motion to reopen based on newly obtained evidence. Now, there are a number of problems with what happened below, but most fundamentally, if you take a step back and look at what happened, you have an asylum seeker who was denied relief based on an adverse credibility determination. That determination was based largely on the inability to provide corroborating documentation. Petitioner testified that he was unable to provide the corroborating documents, things like a brother's death certificate, father's medical records, his own medical records, affidavits of detention, things like that. But he had other issues there, did you not? He lied with respect to his visa application. There are inconsistencies in his – what he said at the airport and then what he said later. Certainly, Your Honor, and I can talk about those inconsistencies. Independent of the documents, the immigration judge did find adverse credibility based on alleged inconsistencies in the testimony. You're saying that that was improper? I am saying that was improper, Your Honor, because, first of all, the first step, you have an airport interview and an interview conducted in the wrong language. Either of those things have given this Court pause in the past to find substantial evidence of adverse credibility. Here you have both working together, a hasty airport interview conducted in the wrong language through an unofficial translator, an Air India employee. We don't know for sure it was the wrong language, do we? We do know for sure it was the wrong language, Your Honor. He testified. The sheet – the immigration report says Hindi. The airport – Air India employee spoke Hindi. The subsequent officer, Zaman, who did the translation, spoke both Punjabi and Hindi. But I believe Petitioner testified that the interview was in Hindi, and he speaks only a little bit of Hindi. He speaks Punjabi. It's his native language. Well, Officer Grant said that he requested a Hindi interpreter. Correct. She said that. But when explored further, I believe that Petitioner just said they gave him a Hindi interpreter, and he assumed that was the only thing available. So the most we could say is there's a dispute about what the right language was. Isn't that a more accurate way to put it? I don't believe so, Your Honor. I mean, we laid out in the papers exactly the course of events. The government contended there was a dispute. We believe – in our reply brief, I think we refuted the fact that there was any question about the language the interview was conducted in. How do you refute it? I mean, you have one person saying the guy asked for a Hindi interpreter, and he says he wanted some other kind of interpreter. That's a – sounds like a factual dispute. Well, if the Court's willing to find a factual dispute, then be that as it may, that's still only one step along the road here. And the next step would be – Okay, but on the first step, the I.J. resolved that factual dispute adverse to you. I don't know that the I.J. did make that finding, that the immigration interview was in the wrong language, that it was in Hindi. I don't know that the I.J. made that finding. I don't think that's in the record. The I.J. appears to have credited the interview, be it in Hindi or Punjabi, as a source of adverse credibility, but I don't see in the record where the I.J. found the interview was conducted in the correct language. So moving on, though, even assuming what the Court – I mean, again, the reply brief lays out exactly why we believe the record shows the interview was conducted in Hindi, not Punjabi. But even if it were conducted in the wrong language, we still have an airport interview, which, again, is not always a great source for adverse credibility findings. But more important, the petitioner explained any alleged inconsistencies. And the I.J. and the BIA were not free to ignore those explanations. For instance, he said in his visa application, he said in his initial interview, he was coming here to attend a home show. That wasn't true. But this Court has recognized that immigrants often don't tell the truth in their visa application because they're seeking asylum. When you tell a lie that is essentially – that is not told to bolster your claim of asylum, but is told to just get you here, he'll say whatever he can to get here to escape persecution. That is not indicative of adverse credibility. Moreover, he testified – He also gave some other reasons, too, didn't he, that turned out not to be the case? Yes, he did. So he testified that he was scared to come here. He was scared to talk to these people. The first people he sees when he gets off a plane are government officials. He's reluctant to share the details of his persecution. He said in his interview that he was told by the person from whom he got the visa to tell the officials when he got here that there was a home show. That's what he was told to say. So he said it. He didn't know there was such a thing as asylum. He had no reason to talk about his persecution. He didn't know that that was an avenue for him. The other ground – Well, if he didn't know anything about asylum, that goes to your predicate, doesn't it? You say that it's okay to lie on a visa application if you're really trying to get asylum, but then you get to the airport and you have no understanding about what asylum is. Not exactly. It's okay to lie if you're coming just to get here. All he wanted to do was get here. He didn't want to seek asylum. That's not why he told them. But we have laws against that. Against – well, I understand. But as far as an adverse credibility determination, he was found not credible on that basis. Not that it was illegal. But he was found not credible on that basis. And this court has held that those sorts of untruths are not indicative of adverse credibility. The other thing that the IJ seized upon was a statement about the father being in detention. He was asked – the petitioner was asked, why can't your father provide the documents? The petitioner said, quote, my father, they have arrested him. And that was at page 538 and 539 of the record. They have arrested him. The immigration judge took this to mean that he is presently in custody. However, earlier in the record, you have statements in the initial credibility interview – sorry, the initial fear interview where he said, my father has been bedridden. Not that he's in custody. Elsewhere in the immigration proceedings, he testified that his father is bedridden. He'd been arrested for four days in April of 2006. And he's now bedridden. He never meant to say that he's in custody. And the IJ took the statement, they have arrested him, to mean he's currently in custody. I think in English it's the present perfect or the past perfect tense, but translated from Punjabi, there's simply no reason to think that they have arrested him to mean he's currently in custody. The petitioner never said that. And so when the IJ took that to be a discrepancy between the different points of testimony, that was simply improper. I wonder if we could fast forward to the motion to reopen for a minute. Okay. He files an untimely motion to reopen, and he has reasons for why it was untimely. Exactly. The VIA rejects the reasons. What's the problem with that? The VIA didn't have any reasoning at all. He set forth in a declaration, I mean, certainly during his testimony in the immigration proceedings, he laid out in detail why he could not get those documents. Starting early on in April of 2007, when he first applied for asylum, he began diligently contacting everyone he knew in India. And nobody was willing or able to help him for all reasons, either because they're bedridden or illiterate or scared of the same persecution. So ultimately, he's able to get the documents as late as May 2008, which is admittedly untimely, past the 90-day deadline. The IJ, sorry, the VIA rejected that without any reasoning. It just said that these documents were reasonably obtainable beforehand without explaining why. I mean, it's clear from the IJ's decision that he wanted to see the brother's death certificate. The petitioner didn't get that, wasn't able to get it until May 2008, well past the 90-day deadline. One of his reasons is that he couldn't get the documents earlier because his mother is illiterate. Correct. Is she illiterate now? She's illiterate now, but she didn't end up helping him. It was his friend Harpal Singh. But that's the reason he's offering. He's offering the reason my mother's illiterate. So what is, they say we're not persuaded that the mother's illiteracy has anything to do with this. What's wrong with that? Well, that, again, to the extent that was one of the reasons, there was a roadblock to every path he could have taken. And the mother is still illiterate. I'm not talking about every path. I'm talking about the ones that they discuss. Okay. One is the mother's illiteracy. They say we're not persuaded that the mother's illiteracy prevented him from filing on time. And I'm asking you, what was wrong with that finding? Well, it's, I mean, again, I take your point, Your Honor, that if the mother's illiteracy wasn't good enough, it's still not good enough. The other one is the parent's medical condition. Exactly. What is wrong with their finding that the parent's medical condition is not their fault, is not the cause of his filing on time? It's simply improper. The medical condition and the illiteracy prevented the parents, and it still prevents the parents. I mean, I would think that reasonably obtainable, the standard under the Real ID Act, has to mean something, reasonableness. And if the parents are bedridden, illiterate, I mean, again, think about what had to happen to get these certificates. They weren't lying around the house. They had to go to whatever officials in India they needed to get them from. They had to have them translated through an official's translator. But that's the situation that existed when he finally got them, right? Correct. So how did that affect his inability to get them sooner? Because it wasn't through his parents that he got them. That situation still exists. Then what you're saying is he asked the wrong people to get him the documents. He asked everyone he knew. He asked including his parents. And his parents then were unable to get the documents and today are unwilling. So that situation still exists. It's still the same hurdle, and to rely on that basis alone is improper because they were never able to get the documents. The immigration courts held that a bedridden and illiterate and fearful set of parents are able to do all the things they need to do to get those documents. That's simply improper. It's not reasonable to expect them to do that because they weren't able to and still aren't able to do it. Let's see. I'm almost out of time. I'll reserve 10 seconds. Okay. We'll look for a very fast rebuttal. Thank you. Counsel for the government, you may proceed. Chris Buchanan for the United States. The petitioner entered the United States on false pretenses. He belatedly presented an asylum claim after being in the country for two weeks, presented then with these multiple instances of deception the agency reasonably held that the petitioner, who was a sophisticated traveler, did not meet his burden of proof to establish his claim for eligibility. Likewise, with respect to his motion to reopen, the petitioner failed to establish what change had occurred between the 27th of July when he testified that his mother was illiterate and his father was bedridden and then the affidavit says they were submitted the following May where his father confirms his legs are still broken and his mother confirms in her affidavit that, in fact, she's still illiterate. The three deceptions that the – there are only three deceptions that the board rested its adverse credibility finding on in this case and the court need not concern itself with any other instances of deception, although the record reflected those – of those three in the government's view. The most important one is his concession that in a sworn statement he told an officer of the Customs and Border Patrol that he had come here to work and I think it's worth looking specifically at the language of the admission because the way this case is postured, the questions about translation are initially raised when the government is attempting to prove removability and then the petitioner concedes removability and concedes an allegation, a factual allegation, number four of the notice to appear and then there was no further inquiry into the translation issue thereafter because at that point the burden shifts then to the petitioner to prove eligibility for asylum. The factual allegation here that he conceded to on the 25th of April was this. You admitted in a sworn statement before an officer of the court that you intended to reside and to be employed in the United States. If you look at the sworn statement that's specifically referenced in that notice to appear in allegation number four, and this is at the record at 776, the question is posed what is the true purpose for seeking admission? The answer is I am coming to work and to earn money so that I can support my parents in India. And so the fact that petitioner then testifies two months later in July 27th, and this is the record at 587, and denies that he ever made that statement and in fact says that it was the interpreter who supplied the answer that he intended to come here to work and not only that, but supplied it over his objection because it's at that point, which is the first time in the record where we first, where we see him talk at length about the fact that his parents are wealthy, that they have land, that they've never worked, he would therefore have no reason to work, and thus he would never have said at the airport that he had come to work. And so in the government's view, the concession at the end of April removes from contention whether or not in his sworn statement he stated that he was coming here to work, in effect to support his parents. The fact that he then testifies to the contrary two months later simply sets up a denial that the agency is faced with and they've got to choose whether he was telling the truth in his concession in the end of April or in his merits hearing two months later. And, of course, the classic question there is on which occasion was he telling the truth. Mr. McKinney, I wonder if we could go to the motion to reopen, as I asked Mr. Skolnick about as well. He, if I understand correctly, offered three reasons for filing his motion late. Correct, Your Honor. Mother's illiteracy, parents' medical condition, and his friends were fearful. Yes, Your Honor. It looks like they dealt with the illiteracy and the medical condition. It looks like they didn't talk about the friends being fearful. That is correct. What do we do about that? Well, because of the finding, the burden, I think, is on the petitioner to prove that under stress of the burden is to show record evidence that compels the conclusion that the explanation was persuasive. Now, keeping in mind that this is a family that, according to the petitioner, was able to muster the resources necessary to purchase a United States visa for $44,000 and then send their son to the United States, and yet, several months later, is unable to take a half-page affidavit and put it in the mail. If you add next to that the assertion, petitioner's assertion on the 27th of July, that his father specifically could not provide any corroborating documents because he could not get out of bed, we see later on, ultimately in the motion to reopen, that that fact hasn't changed. There's no explanation for how his father was. My question has to do with they seem to have addressed only two of the three reasons. Your Honor, the government's view is that those two reasons are sufficient. I would point the Court to the holding in Shrestha, which addressed specifically illiteracy and retaliatory fear as a justification for not providing corroborating documents. And in that case, the agency, similar to here, held that those, although perhaps providing some support for a difficulty in obtaining corroborating documents, do not make it reasonably unavailable. And the Court, in this case, affirmed that holding of the board below. And, of course, here, all we have, the only relevant portion here is the illiteracy, but it is, I think, significant that in Shrestha, you have the application of the deferential standards required under the Real ID Act. Counsel, the I.J. heard testimony from the petitioner that he feared persecution. The I.J. said you need to corroborate that. Correct, Your Honor. Is that correct? That is correct, Your Honor. All right. And he was unable to present, he said, because of problems of people being afraid to indicate that there was persecution going on. Yes, Your Honor. When the motion to reopen was made, and it was untimely, he indicated the reasons why it was delayed in getting that information. Did the BIA, in rejecting the motion to reopen, make any findings as to whether or not these documents demonstrated that they were not reasonably obtainable? Your Honor, the board rejected his explanation as sufficient. In other words, he was unable to, petitioner was never able to clear the threshold showing that the documents were reasonably unavailable. Well, my question is, what is it, is there in the record that the board considered it and made findings that what was put forward was reasonably obtainable prior to that time? Well, Your Honor, the, I don't think, I can't point to you a specific bullet by bullet, you know, addressing. Well, the problem I'm having, and you're aware of the Ventura case, we can't make findings. Correct, Your Honor. The BIA can make findings. Yes. And we, in other cases, where the BIA has not made findings, we've had to send it back. Yes, Your Honor. But in this case, wasn't the finding that the documents were, in fact, reasonably available? In other words, in the board. That appears to me to be a conclusion. Yes, Your Honor. What are the findings to support that conclusion? Well, I think the, I mean, what would the, what would the findings be if. Well, he indicated his reasons. Yes. And those reasons were simply rejected. In other words, the explanation was advanced, and what the board had was the same explanation in 2008 that it had back in July of 2007. There was no change in that explanation. And so when presented with what is characterized as an explanation, but in fact is status quo ante, I think the board is entitled to simply reject that summarily because there can be no, that can't, there's no way that that explanation could be sufficient, if that makes sense. Counsel, is there anything, any authority for the proposition that perhaps no specific findings are necessary so long as there is evidence that the board considered the arguments? Is there a case out there that says that? Your Honor, I am certain that there is, but I do not know that case, and I apologize. But, I mean, that seems to me that's essentially your argument, that as long as the showing was made and the board addressed the showing, that may be enough, at least in terms of the standard of review that we apply? Well, the, yes. The cases that I'm aware of require a deferential standard with respect to either the findings of fact made with regard to whether a document has been held. But assuming that in response to your colloquy with Judge Alicorn, there were no express findings, can you still prevail? Under these facts, I believe so, Your Honor. And that goes back to the simple reason that there was really not an explanation offered to the board. And so the difficulties he described, which were rejected, were the same difficulties. So it's a failure of his burden, is that what you're saying? Yes, Your Honor. All right. Yes, Your Honor. If he wants to relitigate the proceedings, he must adequately support his motion. He failed to do so, and the board need not. Thank you, Counsel. Your time has expired. Mr. Skolnick, talk fast. AR-775 and 494, proof that the interview was conducted in Hindi. And the government is not, or the BIA is not free to ignore explanations for why the documents were not reasonably available, and reasonableness has to mean something. And here he fully met that standard. Thank you. Very well. Thank you very much. The case just argued will be submitted for decision, and we will hear argument next. Thank you.
judges: Alarcon, O'scannlain, Silverman